UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ALBERTO MENDEZ JIMENEZ, | Case No. 2:18-cv-00044 JAM-KJN |
| Plaintiff, | |
| v. | **PRETRIAL CONFERENCE ORDER** |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

Pursuant to court order, a Pretrial Conference was held on December 20, 2019 before Judge John Mendez. Douglas L. Gordon appeared as counsel for plaintiff; Neal C. Lutterman appeared as counsel for defendants. After hearing, the Court makes the following findings and orders:

I. JURISDICTION/VENUE

Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343, and has previously been found to be proper by order of this court, as has venue. Those orders are confirmed.

II. JURY/NON-JURY

Both parties have demanded a jury trial.

1

III. STATEMENT TO BE READ TO JURY

No later than January 27, 2020, the parties shall E-file a joint statement of the case that may be read to the jury at the beginning of jury selection.

IV. UNDISPUTED FACTS

1. The County of Sacramento contracts with the Regents of the University of California Davis to provide Jail Psychiatric Services ("JPS") to inmates housed at RCCC and the Main Jail.

2. On August 15, 2016 plaintiff Luis Alberto Mendez Jimenez ("Mr. Mendez") was detained and arrested by Immigration and Customs Enforcement federal officers in San Jose, California for being in the United States illegally and was transferred from their local San Jose office to RCCC in the County of Sacramento Jail the same day.

3. Upon arrival at RCCC, Mr. Mendez was seen by County of Sacramento nurse Ming-Huei Wu for medical intake.

4. Nurse Wu referred Mr. Mendez to JPS through a telephone referral to JPS nurse Sandra Venus.

5. Nurse Venus faxed information regarding this referral to the JPS office at RCCC that same night.

6. JPS social worker Danielle Dass met with Mr. Mendez on the morning of August 16, 2016 for the purpose of conducting a Clinical Assessment and Suicide Risk Assessment.

7. Mr. Mendez was also seen on August 16 by County nurse Manjeet Kaur for a Physical Examination.

8. Mr. Mendez was then seen August 22 by JPS nurse Charlene Williams.

9. As a result, Mr. Mendez is now quadriplegic.

# V. DISPUTED FACTUAL ISSUES

Plaintiff's Disputed Factual Issues:

1.    Whether plaintiff attempted suicide two times in the six months prior to his detention at RCCC, in February 2016 and June 2016.

2.    Whether plaintiff had a documented history of two suicide attempts in February 2016 and June 2016, and was on prescribed anti-psychotic medication as of the date of his detention.

3.    Whether plaintiff was hospitalized for each such suicide attempt.

4.    Whether plaintiff was prescribed Zyprexa (olanzapine), which was effective in treating his mental illness, following each suicide attempt.

5.    Whether plaintiff took his prescribed Zyprexa on a daily basis, as prescribed, and refilled his prescription as directed.

6.    Whether, at the time of his detention by immigration officers, plaintiff requested permission to retrieve his Zyprexa from his home before being taken away, but such permission was denied.

7.    Whether plaintiff contacted a family member from RCCC to have her go to his home to try to identify and/or retrieve his Zyprexa, but she was unable to locate it.

8.    Whether the mental health care provided by the Regents to plaintiff fell below the applicable standard(s) of care.

9.    Whether the mental health care provided by the Regents caused plaintiff's suicide attempt.

10.    Whether JPS did not have a real system of mental health care at all.

1    11.    Whether JPS relied solely on medication and crisis
2    response.

3    12.    Whether JPS social worker Danielle Dass was negligent in
4    her clinical assessments of plaintiff and defendant Regents are
5    responsible for this negligence.

6    13.    Whether JPS social worker Danielle Dass was deliberately
7    indifferent in her clinical assessments of plaintiff.

8    14.    Whether nurse practitioner Charlene Williams was
9    negligent in her clinical assessments of plaintiff and defendant
10   Regents are responsible for this negligence.

11   15.    Whether nurse practitioner Charlene Williams was
12   deliberately indifferent in her clinical assessments of plaintiff.

13   16.    Whether the mental health care that the Regents provided
14   to Plaintiff met the standards of care and contributed to
15   Plaintiff's attempted suicide and resulting physical injuries.

16   17.    Whether CHS nurse Ming-Huei Wu recorded in her chart that
17   plaintiff had attempted suicide 2 times within the past 4-6 months.

18   18.    Whether CHS nurse Ming-Huei Wu recorded in her chart that
19   plaintiff was taking psychiatric medications within the past 30
20   days.

21   19.    Whether plaintiff told Nurse Wu that he obtained his
22   psychiatric medications from a pharmacy located on Bascom Avenue in
23   San Jose.

24   20.    Whether CHS nurse Ming-Huei Wu recorded in her chart that
25   plaintiff had taken his most recent dose of medication the day
26   before her encounter with him.

27   21.    Whether CHS nurse Ming-Huei Wu recorded in her chart that
28   plaintiff had been hospitalized for psychiatric treatment within

4

1  the past 30 days.

2      22.  Whether CHS nurse Ming-Huei Wu recorded in her chart that
3  plaintiff had a history of anxiety and panic attacks.

4      23.  Whether CHS nurse Ming-Huei Wu reported to JPS Nurse
5  Sandra Venus that plaintiff had a history of several suicide
6  attempts.

7      24.  Whether CHS nurse Ming-Huei Wu reported to JPS Nurse
8  Sandra Venus that plaintiff was currently on psychiatric
9  medication.

10     25.  Whether CHS nurse Ming-Huei Wu reported to JPS Nurse
11 Sandra Venus that plaintiff had taken his last does of psychiatric
12 medication the day before his encounter with Nurse Wu.

13     26.  Whether Nurse Venus reported to JPS social worker
14 Danielle Dass that plaintiff had a history of several suicide
15 attempts.

16     27.  Whether Nurse Venus reported to JPS social worker
17 Danielle Dass that plaintiff was currently on psychiatric
18 medication.

19     28.  Whether Nurse Venus reported to JPS social worker
20 Danielle Dass that plaintiff had taken his last does of psychiatric
21 medication the day before his encounter with Nurse Wu.

22     29.  Whether plaintiff reported to CHS Nurse Manjeet Kaur that
23 he had a history of anxiety and panic attacks.

24     30.  Whether plaintiff reported to CHS Nurse Manjeet Kaur that
25 he had a history of more than one suicide attempts.

26     31.  Whether Ms. Dass reviewed the chart of Nurse Wu.

27     32.  Whether Ms. Dass reviewed the chart of Nurse Kaur.

28     33.  Whether plaintiff told Ms. Dass he had been taking

5

psychiatric medications.

34. Whether plaintiff told Ms. Dass he felt better on the medications.

35. Whether plaintiff told Ms. Dass he was hearing voices.

36. Whether plaintiff told Ms. Dass he had a history of more than one suicide attempts.

37. Whether Ms. Dass noted in her chart that plaintiff had been taking psychiatric medications.

38. Whether Ms. Dass noted in her chart that plaintiff was hearing voices.

39. Whether Ms. Dass noted in her chart that plaintiff had a history of more than one suicide attempts.

40. Whether Ms. Dass had internal inconsistencies in her chart regarding whether plaintiff had attempted suicide, was on psychiatric medications, had been hospitalized, and was hearing voices, among other inconsistencies.

41. Whether Ms. Dass failed to reconcile inconsistencies and discrepancies between her own information and information contained elsewhere in the eChart system, including from Nurse Wu's chart, from Nurse Kaur's chart, and Nurse Venus's referral note.

42. Whether Ms. Dass obtained an authorization to permit her to inquire with outside pharmacies or health providers regarding plaintiff's psychiatric medications, or whether she attempted to make any inquiry regarding the specific medication he had been prescribed.

43. Whether Ms. Dass performed a suicide risk assessment of plaintiff.

44. Whether Ms. Dass's suicide risk assessment met the

1 | applicable standard of care.

2 |     45.   Whether Ms. Dass rendered any diagnosis of plaintiff.

3 |     46.   Whether Nurse Charlene Williams reviewed the charts
4 | available to her from the eChart system.

5 |     47.   Whether Ms. Williams reviewed the chart of Nurse Wu.

6 |     48.   Whether Ms. Williams reviewed the chart of Nurse Kaur.

7 |     49.   Whether Ms. Williams reviewed the chart of Ms. Dass.

8 |     50.   Whether plaintiff told Ms. Williams he had been taking
9 | psychiatric medications.

10 |     51.   Whether plaintiff told Ms. Williams he was hearing
11 | voices.

12 |     52.   Whether plaintiff told Ms. Williams he had a history of
13 | more than one suicide attempts.

14 |     53.   Whether Ms. Williams noted in her chart that plaintiff
15 | had been taking psychiatric medications.

16 |     54.   Whether Ms. Williams noted in her chart that plaintiff
17 | was hearing voices.

18 |     55.   Whether Ms. Williams noted in her chart that plaintiff
19 | had a history of more than one suicide attempts.

20 |     56.   Whether Ms. Williams failed to reconcile inconsistencies
21 | and discrepancies between her own information and information
22 | contained elsewhere in the eChart system, including from Nurse Wu's
23 | chart, from Nurse Kaur's chart, from Nurse Venus's referral note
24 | and from Ms. Dass's chart.

25 |     57.   Whether Ms. Williams obtained an authorization to permit
26 | her to inquire with outside pharmacies or health providers
27 | regarding plaintiff's psychiatric medications, or whether she
28 | attempted to make any inquiry regarding the specific medication he

1  had been prescribed.

2      58.  Whether Ms. Williams rendered any diagnosis of plaintiff.

3      59.  Whether Ms. Williams performed a suicide risk assessment

4  of plaintiff.

5      60.  Whether Ms. Williams's suicide risk assessment met the

6  applicable standard of care.

7      61.  Whether Ms. Williams or Ms. Dass prescribed or provided

8  medication or other treatment for plaintiff at any time.

9      62.  Whether Ms. Dass and Ms. Williams knew or should have

10  known that Mr. Mendez had been twice hospitalized for suicide

11  attempts within the past 6 months, that he was being maintained on

12  psychiatric medications, that he was suffering from anxiety and

13  panic attacks and that he was hearing voices.

14      63.  Whether Ms. Dass and Ms. Williams failed to review the

15  mental health information available to them, failed to make any

16  inquiry regarding his prescribed medication, failed to properly

17  document the information they gathered, failed to offer him any

18  treatment and failed to schedule any sort of follow-up regarding

19  his mental health status.

20      64.  Whether the mental health care provided by Ms. Dass and

21  Ms. Williams caused plaintiff to be left without any mental health

22  treatment.

23      65.  Whether the mental health care provided by Ms. Dass and

24  Ms. Williams caused plaintiff's mental health to deteriorate and

25  resulted in worsening of his mental health symptoms.

26      66.  Whether the mental health care provided by Ms. Dass and

27  Ms. Williams caused plaintiff to attempt suicide in October 2016.

28      67.  Whether, as a result of his suicide attempt, Luis Mendez

8

sustained comminuted fractures of his C5-C6 cervical vertebrae and incomplete spinal cord injuries, for which he underwent emergency fusion and corpectomy surgery on October 23, 2016, the date he sustained the injuries. He has Class A tetraplegia which is permanent in nature.

68. There is no significant dispute about the need for future medical care; the parties have offered alternative Life Care Plans which essentially differ regarding the type of attendant/facility care. Plaintiff has had a Life Care Plan prepared which estimates his future medical costs between approximately $6,400,00.00-$12,100,000.00.

Defendants' Disputed Factual Issues:

1. Whether the mental health care that was delivered to Plaintiff by Danielle Dass, LCSW and Charlene Williams, N.P. was within the standard of care.

2. Whether any failure by Danielle Dass, LCSW and Charlene Williams, N.P. to provide mental health care that was adequate and within the standard of care caused Plaintiff any harm.

3. Whether Defendants Danielle Dass, LCSW and Charlene Williams, N.P. were deliberately indifferent to the serious medical needs of Plaintiff in their delivery of mental health care to him.

4. Whether Danielle Dass, LCSW and Charlene Williams, N.P. failed to protect Plaintiff from harm.

5. Whether Danielle Dass, LCSW and Charlene Williams, N.P. knew or should have known that Plaintiff was suicidal at any time during his detention at the Jail.

6. Whether the standard of care required that Plaintiff be seen and evaluated by a JPS provider or clinician at any time

1 | between August 23, 2016 and October 23, 2016.

2 | 7. Whether Plaintiff had any suicidal ideation or intent at
3 | the commencement of his detention on August 15, 2016.

4 | 8. Whether there were any negligent acts, or failures to
5 | act, on the part of Danielle Dass, LCSW and Charlene Williams, N.P.
6 | in providing care and treatment to Plaintiff during his detention
7 | at the Jail.

8 | 9. Whether there were any negligent acts, or failures to
9 | act, on the part of Danielle Dass, LCSW and Charlene Williams, N.P.
10 | in providing care and treatment to Plaintiff during his detention
11 | at the Jail which caused Plaintiff any harm.

12 | 10. Whether Plaintiff's suicide attempt on October 23, 2016
13 | was foreseeable.

14 | 11. Whether Plaintiff's suicide attempt on October 23, 2016
15 | was preventable.

16 | VI. DISPUTED EVIDENTIARY ISSUES

17 | Plaintiff's Evidentiary Issues:

18 | Plaintiff anticipates bringing motions in limine to exclude
19 | the following evidence:

20 | 1. To exclude evidence regarding plaintiff's immigration
21 | status and the reason for his detention, as well as his current and
22 | future living in the United States, pursuant to California Evidence
23 | Code section 351.2 and FRE 403.

24 | 2. To exclude evidence regarding plaintiff's use of
25 | methamphetamine prior to his detention, pursuant to FRE 403.

26 | 3. To preclude defense expert Joseph Penn, MD from
27 | testifying regarding his diagnosis of plaintiff's mental health
28 | conditions, pursuant to *Daubert v. Merrell Dow Pharmaceuticals,*

1 *Inc.*, 509 U.S. 579 and following cases, and also to preclude Dr.
2 Penn from testifying regarding opinions not expressed either in his
3 report or in his deposition, pursuant to FRCP 26(a)(2), FRCP 37(c),
4 and this court's Scheduling Order. Dr. Penn had never examined or
5 interviewed plaintiff Mendez and is thus unqualified to render an
6 opinion regarding his diagnosis. Dr. Penn was provided the June
7 2016 report of Dr. Bruce Gage, and the November 2016 report of
8 Lindsey Hayes, but failed to discuss those reports or opinions in
9 Dr. Penn's report and was not prepared to discuss them at his
10 deposition.

11     4.    The Court grants Plaintiff's motions in limine identified
12 in the joint pretrial statement as ¶¶ 5C, 5E and 5F (pp. 10-11).

13     Defendants' Evidentiary Issues:

14     1.    Defendants will move to preclude any evidence of,
15 testimony relating to, questioning regarding, or any reference to,
16 Dr. Bruce Gage or his inspection of the Sacramento County Jail, and
17 his report thereafter.

18     2.    Defendants will move to preclude any evidence of,
19 testimony relating to, questioning regarding, or any reference to,
20 Eldon Vail or his inspection of the Sacramento County Jail, and his
21 report thereafter.

22     3.    Defendants will move to preclude any evidence of,
23 testimony relating to, questioning regarding, or any reference to
24 any inspection of the Sacramento County Jail, or any report or
25 letter prepared after such inspection, by Disability Rights
26 California.

27     4.    Defendants will move to preclude or limit the testimony
28 of Phillip Stanley concerning his review of, or reliance on, the

1   Gage and or Vail report.

2       5.    Defendants will move to exclude from evidence all expert
3   witness reports on grounds they constitute hearsay.

4       6.    Defendants will move to preclude any evidence, inference,
5   question and/or argument that Charlene Williams was not legally
6   qualified to practice as a nurse practitioner in a psychiatric
7   setting.

8       7.    Defendants will move to preclude Phillip Stanley from
9   opining on the standard of care, as well as the adequacy of
10  Danielle Dass, LCSW and Charlene Williams, N.P.s' mental health
11  screenings or qualifications to perform such screenings.

12                        VII. RELIEF SOUGHT

13      Plaintiff seeks economic damages in the amount of his medical
14  expenses, as well as noneconomic damages.  Plaintiff is not making
15  any claim for loss of income or wages or punitive damages.

16      Defendants pray that Plaintiff take nothing by way of his
17  complaint.

18                        VIII. POINTS OF LAW

19      Trial briefs may be E-filed with the court no later than
20  January 27, 2020.  Any points of law not previously argued to the
21  Court should be briefed in the trial briefs.

22                        IX. ABANDONED ISSUES

23      A number of defendants have been dismissed following a motion
24  to dismiss (The United States) and motions for summary judgment
25  (County of Sacramento and associated individual defendants; Gregory
26  Sokolov and Andrea Javist of the Regents).  Apart from that,
27  plaintiff is not aware of any abandoned issues.

28  ///

                              12

# X. WITNESSES

Plaintiff's witness list is attached to this Pretrial Conference Order as Exhibit A.

Defendants' witness list is attached to this Pretrial Conference Order as Exhibit B.

Each party may call a witness designated by the other.

A.    No other witnesses will be permitted to testify unless:

(1)    The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)    The witness was discovered after the Pretrial Conference and the proffering party makes the showing required in "B" below.

B.    Upon the post-Pretrial discovery of witnesses, the attorney shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so that the court may consider at trial whether the witnesses shall be permitted to testify.    The evidence will not be permitted unless:

(1)    The witnesses could not reasonably have been discovered prior to Pretrial;

(2)    The court and opposing counsel were promptly notified upon discovery of the witnesses;

(3)    If time permitted, counsel proffered the witnesses for deposition;

(4)    If time did not permit, a reasonable summary of the witnesses' testimony was provided opposing counsel.

///

///

13

XI. EXHIBITS, SCHEDULES AND SUMMARIES

Plaintiff's Exhibit List is attached to this Pretrial Conference Order as Exhibit C.

Defendants' Exhibit List is attached to this Pretrial Conference Order as Exhibit D.

Each party may use an exhibit designated by the other.

A.  No other exhibits will be permitted to be introduced unless:

(1)  The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)  The exhibit was discovered after the Pretrial Conference and the proffering party makes the showing required in paragraph "B," below.

B.  Upon the post-Pretrial discovery of exhibits, the attorneys shall promptly inform the court and opposing counsel of the existence of such exhibits so that the court may consider at trial their admissibility.  The exhibits will not be received unless the proffering party demonstrates:

(1)  The exhibits could not reasonably have been discovered prior to Pretrial;

(2)  The court and counsel were promptly informed of their existence;

(3)  Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.  If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

14

As to each exhibit, each party is ordered to exchange copies of the exhibit not later than fourteen (14) days before trial. Each party is then granted five (5) days to file and serve objections to any of the exhibits. In making the objection, the party is to set forth the grounds for the objection. The parties shall pre-mark their respective exhibits in accord with the Court's Pretrial Order. Exhibit stickers may be obtained through the Clerk's Office. An original and one (1) copy of the exhibits shall be presented to Harry Vine, Deputy Courtroom Clerk, at 8:30 a.m. on the date set for trial or at such earlier time as may be agreed upon. Mr. Vine can be contacted at (916) 930-4091 or via e-mail at: hvine@caed.uscourts.gov. As to each exhibit which is not objected to, it shall be marked and may be received into evidence on motion and will require no further foundation. Each exhibit which is objected to will be marked for identification only.

## XII. DISCOVERY DOCUMENTS

The list of Plaintiff's discovery documents (portions of deposition, interrogatories, and responses to requests for admission) they intend to use at trial is attached as Exhibit E.

The list of Defendants' discovery documents (portions of deposition, interrogatories, and responses to requests for admission) they intend to use at trial is attached as Exhibit F.

## XIII. FURTHER DISCOVERY OR MOTIONS

Pursuant to the court's Status Conference Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Pretrial Conference. That order is confirmed. The parties are free to do anything they desire pursuant to informal agreement. However, any such agreement will

1 | not be enforceable in this court.

2 | XIV. STIPULATIONS

3 | As a result of this October 23, 2016 suicide attempt, Mr.
4 | Mendez sustained fractures to his C5 and C6 cervical vertebrae and
5 | underwent spinal fracture reduction and fusion surgery. He
6 | sustained permanent spinal cord injury, resulting in permanent
7 | tetraplegia, with neurogenic bladder and bowel, neurogenic skin,
8 | and other sequelae of spinal cord injury.

9 | The parties have stipulated that all records obtained by
10 | subpoena in the discovery of this case be deemed authenticated,
11 | such that custodians of records need not be called to testify.

12 | The parties also stipulate that the entire Correctional Health
13 | Services chart, including all Jail Psychiatric Services charts and
14 | notation, may be admitted into evidence.

15 | XV. AMENDMENTS/DISMISSALS

16 | The parties do not anticipate or request any further
17 | amendments or dismissals.

18 | XVI. FURTHER TRIAL PREPARATION

19 | A. Counsel are directed to Local Rule 285 regarding the
20 | contents of trial briefs. Such briefs may be E-filed on or before
21 | January 27, 2020.

22 | B. Counsel are further directed to confer and to attempt to
23 | agree upon a joint set of jury instructions. The joint set of
24 | instructions shall be lodged via ECF with the court clerk on or
25 | before January 27, 2020 and shall be identified as the "Jury
26 | Instructions Without Objection." As to instructions as to which
27 | there is dispute the parties shall submit the instruction(s) via
28 | ECF as its package of proposed jury instructions also on or before

16

1   January 31, 2020. This package of proposed instructions should not
2   include the "Jury Instructions Without Objection" and should be
3   clearly identified as "Disputed Jury Instructions" on the proposed
4   instructions.

5        The parties shall e-mail a set of all proposed jury
6   instructions in word format to the Court's Judicial Assistant, Jane
7   Klingelhoets, at: jklingelhoets@caed.uscourts.gov.

8        C.   It is the duty of counsel to ensure that a hard copy of
9   any deposition which is to be used at trial has been lodged with
10  the Clerk of the Court pursuant to Local Rule 133(j). The
11  depositions shall be lodged with the court clerk no later than
12  January 27, 2020. Counsel are cautioned that a failure to
13  discharge this duty may result in the court precluding use of the
14  deposition or imposition of such other sanctions as the court deems
15  appropriate.

16       D.   The parties are ordered to E-file with the court and
17  exchange between themselves no later than January 27, 2020, a
18  statement designating portions of depositions intended to be
19  offered or read into evidence (except for portions to be used only
20  for impeachment or rebuttal).

21       E.   The parties are ordered to E-file with the court and
22  exchange between themselves no later than January 27, 2020, the
23  portions of Answers to Interrogatories and/or Requests for
24  Admission which the respective parties intend to offer or read into
25  evidence at the trial (except portions to be used only for
26  impeachment or rebuttal).

27       F.   Each party may submit proposed voir dire questions the
28  party would like the court to put to prospective jurors during jury

17

1 │ selection.  Proposed voir dire should be submitted via ECF no later
2 │ than January 27, 2020.

3 │     G.  Each party may submit a proposed verdict form that the
4 │ party would like the Court to use in this case.  Proposed verdict
5 │ forms should be submitted via ECF no later than January 27, 2020.

6 │     H.  In limine motions shall be E-filed separately on or
7 │ before January 23, 2020.  Opposition briefs shall be E-filed on or
8 │ before January 28, 2020.  No reply briefs may be filed.

9 │ XVII. SETTLEMENT NEGOTIATIONS

10 │     The parties have agreed to a private settlement conference
11 │ before Honorable Richard Gilbert, retired, on January 15, 2020.

12 │     No formal Settlement Conference will be set before a Judge of
13 │ this Court in this case at this time.

14 │ XVIII. AGREED STATEMENTS

15 │     See paragraph III, *supra*.

16 │ XIX. SEPARATE TRIAL OF ISSUES

17 │     Plaintiff and Defendants do not anticipate or request a
18 │ separate trial of any issues.

19 │ XX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

20 │     None.

21 │ XXI. ATTORNEYS' FEES

22 │     The matter of the award of attorneys' fees to prevailing
23 │ parties pursuant to statute will be handled by motion in accordance
24 │ with Local Rule 293.

25 │ XXII. MISCELLANEOUS

26 │     Plaintiff Luis Mendez is tetraplegic and with his current care
27 │ is presently unable to stay out of town overnight.  He resides in
28 │ San Jose.  Plaintiff requests that he be permitted to be absent

18

1  from the courtroom other than at the time of his testimony.
2  Counsel for the parties have discussed this and it is anticipated
3  they will be able to cooperate on the timing of his testimony to
4  ensure it can be completed in a single day.  Plaintiff would also
5  request the assistance of the court in scheduling such testimony,
6  especially if the timing requires taking some witnesses out of
7  order.  Plaintiff's requests are granted.

8                  XXIII. ESTIMATE OF TRIAL TIME/TRIAL DATE

9      The parties estimate ten (10) to thirteen (13) court days for
10  trial.  Trial will commence on or about February 3, 2020, at 9:00
11  a.m.

12      Counsel are to call Harry Vine, Courtroom Deputy, at
13  (916) 930-4091, one week prior to trial to ascertain the status of
14  the trial date.

15                  XXIV. OBJECTIONS TO PRETRIAL ORDER

16      Each party is granted seven (7) days from the date of this
17  Pretrial Order to object or respond to it via ECF.

18      IT IS SO ORDERED.

19  DATED: December 20, 2019

                                    JOHN A. MENDEZ
                                    United States District Judge

19

EXHIBIT A

1  Douglas L. Gordon #163992
   Lyndsie N. Russell #309262
2  MILES SEARS & EANNI
   2844 Fresno Street
   Fresno, California 93721
3  (559) 486-5200
   (559) 486-5240 – Fax
4

5  Attorneys for Plaintiff Luis Alberto Mendez Jimenez

6

7              **UNITED STATES DISTRICT COURT**

8            **EASTERN DISTRICT OF CALIFORNIA**

9                 **SACRAMENTO DIVISION**

10  LUIS ALBERTO MENDEZ JIMENEZ,      | Case No.: 2:18-CV-00044-JAM-KJN

11                    Plaintiff,      | **PLAINTIFF'S LIST OF WITNESSES**

12       v.                          |
                                     | **EXHIBIT A**
13  THE REGENTS OF THE
    UNIVERSITY OF CALIFORNIA;
14  DANIELLE DASS, LCSW;
    CHARLENE WILLIAMS, N.P.,         | **Trial Date: February 3, 2020**
15
                    Defendants.
16

17      NOTICE IS HEREBY GIVEN that Plaintiff LUIS ALBERTO MENDEZ JIMENEZ

18  will call the following witnesses to testify at the trial in this

19  matter:

20      Plaintiff and Family Member:

21      Luis Mendez
        2390 Lucretia Avenue, Apt. 1511
22      San Jose, California 95122

23      Amelia Mendez
        2390 Lucretia Avenue, Apt. 1511
24      San Jose, California 95122

1    Medical Witnesses:

2    Mark W. Hawk, M.D. (Via Video)
     Kaiser Permanente - Sacramento Medical Center
3    2025 Morse Avenue
     Sacramento, California 95825

4

5    Jason A. London, M.D. (Via Video)
     Kaiser Permanente - South Sacramento Medical Center
6    6600 Bruceville Road
     Sacramento, California 95823

7

8    Pradeep Kumar, M.D. (Via Video)
     Fremont Hospital
9    39001 Sundale Drive
     Fremont, California 94538

10

11   Miscellaneous Witnesses:

12   Deputy Sheriff Tinley Seitz
     Rio Cosumnes Correctional Center
13   12500 Bruceville Road
     Elk Grove, California 95757

14

15   Deputy Sheriff Alexander Egenberger
     Rio Cosumnes Correctional Center
16   12500 Bruceville Road
     Elk Grove, California 95757

17

18   Deputy Sheriff Jordan Lee
     Rio Cosumnes Correctional Center
19   12500 Bruceville Road
     Elk Grove, California 95757

20

21   Gregory Sokolov, M.D. (Via Video)
     Jail Psychiatric Services
22   University of California, Davis
     Department of Psychiatry
23   Davis, California

24   ///

```
1     Danielle Dass, LCSW
      Jail Psychiatric Services
2     University of California, Davis
      Department of Psychiatry
3     Davis, California

4     Charlene Williams, N.P.
      Jail Psychiatric Services
5     University of California, Davis
      Department of Psychiatry
6     Davis, California

7     Andrea Javist (Via Video)
      Jail Psychiatric Services
8     University of California, Davis
      Department of Psychiatry
9     Davis, California

10    Manjeet Kaur, R.N.
      9948 Winkle Circle
11    Elk Grove, California 95757

12    Sandra Venus
      Jail Psychiatric Services
13    University of California, Davis
      Department of Psychiatry
14    Davis, California

15    Elizabeth Weeks, R.N.
      9619 Hickory Railway
16    Elk Grove, California 95624

17    Ming-Huei Wu, R.N.
      32 Shady River Circle
18    Sacramento, California 95831

19    Bruce C. Gage, M.D. (Via Video)
      7802 Cody Street, W
20    Lakewood, Washington 98499

21    Jerry Elder (Via Deposition Transcript)
      Jail Psychiatric Services
22    University of California, Davis
      Department of Psychiatry
23    Davis, California

24 /// 
```

```
 1        John Villaroman
          Jail Psychiatric Services
 2        University of California, Davis
          Department of Psychiatry
 3        Davis, California

 4        Plaintiff's Retained Expert Witnesses:

 5        Philip Stanley
          5440 46th Avenue SW
 6        Seattle, Washington 98136

 7        Cheryl D. Wills, M.D.
          5247 Wilson Mills Road, PMB 452
 8        Cleveland, Ohio 44143

 9        Linda D. Olzack, R.N., B.S.N., P.H.N., C.L.C.P.
          OLZACK HEALTHCARE CONSULTING, INC.
10        1120 Commerce Avenue #15
          Atwater, California 95301

11

12        Amy L. Magnusson, M.D.
          Sharp Memorial Rehab. Hospital
13        2999 Health Center Drive
          San Diego, California 92123

14

15        Tamorah Hunt, Ph.D.
          FORMUZIS HUNT & LANNING INC
16        1851 East First Street, Suite 1160
          Santa Ana, California 92705.

17

18   DATED: December 12, 2019     MILES, SEARS & EANNI

19

20                           By:_____
                                  DOUGLAS L. GORDON
21                                Attorneys for Plaintiff

22

23

24
```

EXHIBIT B

**Exhibit B – Defendants' Potential Trial Witness**

1. Joseph V. Penn, Ph.D., UTMB Correctional Managed Care, Director, Mental Health Services, UTMB Department of Psychiatry, 200 River Pointe Drive, Suite 200, Conroe, TX 77304.

2. Thomas Hedge, M.D., Northridge Hospital Medical Center, Center for Rehabilitation, 4th Floor, IFL, 18300 Roscoe Blvd., Northridge, CA 91325.

3. Scott Kush, M.D., JD, MPH, Life Expectancy Group, 1370 Willow Road, Menlo Park, CA 94025.

4. Mark Cohen, Cohen/Volk Economic Consulting Group, 1155 Alpine Road, Walnut Creek, CA 94596.

5. Melissa Keddington, R.N., Quality Life Care Plans, Inc., 4175 E. La Palma Avenue, Suite 270, Anaheim, CA 92807.

6. Robert Hales, M.D., Jail Psychiatric Services, UCDMC Department of Psychiatry, 2230 Stockton Blvd., Sacramento, CA 95817.

7. Andrea Javist, Jail Psychiatric Services, UCDMC Department of Psychiatry, 2230 Stockton Blvd., Sacramento, CA 95817.

8. Ming-Huei, Wu, c/o Correctional Health Services, Sacramento County Sheriff's Department, 711 G Street, Sacramento, CA 95814.

9. Danielle Dass, LCSW, Jail Psychiatric Services, UCDMC Department of Psychiatry, 2230 Stockton Blvd., Sacramento, CA 95817.

10. Charlene Williams, NP, Jail Psychiatric Services, UCDMC Department of Psychiatry, 2230 Stockton Blvd., Sacramento, CA 95817.

11. Manjeet Kaur, RN, Correctional Health Services, Sacramento County Sheriff's Department, 711 G Street, Sacramento, CA 95814.

12. Elizabeth Weeks, R.N., Correctional Health Services, Sacramento County Sheriff's Department, 711 G Street, Sacramento, CA 95814.

13. Pradeep Kumar, M.D., Fremont Hospital, 39001 Sundale Dr., Fremont, CA 94538.

14. Jason London, M.D., Kaiser Permanente, 6600 Bruceville Rd., Sacramento, CA 95823.

15. Mark Hawk, M.D., Kaiser Permanente, 6600 Bruceville Rd., Sacramento, CA 95823.

16. Linton Holsenbeck, M.D., Narvaez Behavioral Health, 614 Tully Rd., San Jose, CA 95111.

**Exhibit B – Defendants' Potential Trial Witness**

17. Deputy Tinley Seitz, Sacramento County Sheriff's Department, 711 G Street, Sacramento, CA 95814.

18. Deputy Alexander Egenberger, Sacramento County Sheriff's Department, 711 G Street, Sacramento, CA 95814.

19. Deputy Jordan Lee, Sacramento County Sheriff's Department, 711 G Street, Sacramento, CA 95814.

20. Luis Alberto Mendez Jimenez, 2390 Lucretia Avenue, Apt. 1511, San Jose, CA 95122.

21. Alvino Mendez

22. Amelia Mendez, 2390 Lucretia Avenue, Apt. 1511, San Jose, CA 95122.

# EXHIBIT C

Douglas L. Gordon #163992
Lyndsie N. Russell #309262
MILES SEARS & EANNI
2844 Fresno Street
Fresno, California 93721
(559) 486-5200
(559) 486-5240 - Fax

Attorneys for Plaintiff Luis Alberto Mendez Jimenez

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| LUIS ALBERTO MENDEZ JIMENEZ,<br><br>                    Plaintiff,<br><br>     v.<br><br>THE REGENTS OF THE<br>UNIVERSITY OF CALIFORNIA;<br>DANIELLE DASS, LCSW;<br>CHARLENE WILLIAMS, N.P.,<br><br>                    Defendants. | Case No.: 2:18-CV-00044-JAM-KJN<br><br>**PLAINTIFF'S LIST OF EXHIBITS**<br><br>**EXHIBIT C**<br><br>**Trial Date: February 3, 2020** |

NOTICE IS HEREBY GIVEN that Plaintiff LUIS ALBERTO MENDEZ JIMENEZ intends to offer the following exhibits into evidence at trial in this matter:

1.    JPS Policy and Procedure Manual - Bates JPS 1-395

2.    JPS Performance Reviews - Bates JPS 396-524

3.    Medical Records

4.    Medical records/x-rays from Kaiser Permanente

5.    Medical records from Santa Clara Valley Medical Center

6.   Psychological records from Emergency Psychiatric Services – Santa Clara Valley Medical Center

7.   Psychological records from Fremont Hospital

8.   Psychological records from Narvaez Behavioral Health

9.   Pharmacy records from Valley Specialty Center Pharmacy

10.  Cosumnes Fire Department Report

11.  CHS County Medical Records – Bates CO_000003-000191

12.  CHS Appointment Log – Bates CO_430-444

13.  Jail Telephone Calls – audio and transcripts – Bates CO_565

14.  Contracts between Sacramento County and UC – Bates CO_192-249

15.  Luis Mendez Jimenez court records Re 7/26/13 assault charge

16.  Jail videos – CO_000001; CO_000002

17.  Plaintiff's Post-Accident photographs 092517

18.  Plaintiff's injury photographs

19.  Plaintiff's bedsore photographs July 2019

20.  Plaintiff's bedsore photographs October 2019

21.  Plaintiff's bedsore photographs November 2019

22.  Plaintiff's Pre-Accident photographs

23.  Plaintiff's injury photograph

24.  IME Photographs by Linda Olzack, R.N. 052019

25.  Photographs of prescription bottles

26.  Control booth photographs-videos from County

27.  RCCC inspection photographs 071018

28.  RCCC inspection photographs by Phillip Stanley 071018

```
 1  │ 29.  RCCC image from web
 2  │ 30.  Report of Bruce Gage, M.D., date June 2016
 3  │ 31.  Report of Eldon Vail, dated 2016
 4  │ 32.  Report of Lindsay Hayes, dated November 2016
 5  │ 33.  Report prepared by Philip Stanley
 6  │ 34.  Report prepared by Cheryl Wills, M.D.
 7  │ 35.  Report prepared by Linda D. Olazack, R.N.
 8  │ 36.  Report prepared by Tamorah Hunt, Ph.D.
 9  │ 37.  Report prepared by Amy L. Magnusson, M.D.
10  │ 38.  Report prepared by Joseph V. Penn, M.D.
11  │ 39.  Report prepared by Thomas L. Hedge, Jr., M.D.
12  │ 40.  Report prepared by Scott J. Kush, M.D.
13  │ 41.  Report prepared by Mark Cohen
14  │ 42.  Report prepared by Melissa A. Keddington, R.N.
15  │ 43.  Report prepared by Robert D. Canning, Ph.D.
16  │ 44.  Report prepared by Emily A. Keram, M.D.
17  │ 45.  Report prepared by David E. Raymond, Ph.D.
18  │ 46.  Plaintiff's immigration documents - U.S. Department of Justice,
19  │      United States Immigration Court
20  │ 47.  County Incident Report - Bates CO_250-276
21  │ 48.  County custody files - Bates CO_277-296
22  │ 49.  PF-11s - Bates CO_351-352
23  │ 50.  PF-5s - Bates CO_353-356
24  │ 51.  Logbooks - Bates CO_357-358
```

1  52.  County General Orders

2      - Intake, Search, Reception - Bates CO_3104-3107

3      - Psychiatric Services - Bates CO_3206-3207

4      - Medical Intake Screening - CO_3212-3213

5      - Health Records - CO_3219-3220

6  53.  "Oxford Textbook of Correctional Psychiatry"

7  54.  "Psychiatric Services in Jails and Prisons" - APA

8  55.  "Suicide Prevention Resource Guide" - NCCHC.

9  DATED: December 12, 2019     MILES, SEARS & EANNI

10

11                              By:_____
                                    DOUGLAS L. GORDON
12                                  Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT D

## Exhibit D

A.   Excerpts of Luis Mendez Jimenez's Correctional Health Services Records

B.   Excerpts of the Jail Psychiatric Services Policy & Procedure Manual

C.   Excerpts of Luiz Mendez Jimenez's Santa Clara Valley Medical Center Records

D.   Excerpts of Luiz Mendez Jimenez's Fremont Hospital Records

E.   Excerpts of Luiz Mendez Jimenez's Kaiser Permanente Records

F.   Excerpts of Luis Mendez Jimenez's Narvaez Behavioral Health Records

G.   Excerpts of Luis Mendez Jimenez's Emergency Psychiatric Services Records

H.   Excerpts of Luis Mendez Jimenez's Consumnes Fire Department Records

I.   Defense Expert Mark Cohen's Cost of Care for Luis Mendez Jimenez

J.   Defense Expert Melissa Keddington's Side by Side Chart of Future Medical Care Needs and Costs

K.   Selected Photographs of Rio Cosumnes Correctional Center's KBN Housing Facility

L.   County Incident Report - Bates CO_250-276

M.   County custody files - Bates CO_277-296

N.   PF-11s - Bates CO_351-352

O.   PF-5s - Bates CO_353-356

P.   Logbooks - Bates CO_357-358

# EXHIBIT E

Douglas L. Gordon #163992
Lyndsie N. Russell #309262
MILES SEARS & EANNI
2844 Fresno Street
Fresno, California 93721
(559) 486-5200
(559) 486-5240 – Fax

Attorneys for Plaintiff Luis Alberto Mendez Jimenez

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| LUIS ALBERTO MENDEZ JIMENEZ,<br><br>                       Plaintiff,<br><br>   v.<br><br>THE REGENTS OF THE<br>UNIVERSITY OF CALIFORNIA;<br>DANIELLE DASS, LCSW;<br>CHARLENE WILLIAMS, N.P.,<br><br>                Defendants. | Case No.: 2:18-CV-00044-JAM-KJN<br><br>**PLAINTIFF'S DISCOVERY DOCUMENTS LIST**<br><br>**EXHIBIT E**<br><br>**Trial Date: February 3, 2020** |

NOTICE IS HEREBY GIVEN that Plaintiff LUIS ALBERTO MENDEZ JIMENEZ intends to offer the following discovery documents into evidence at trial in this matter:

**Designation of Deposition Testimony taken by Video**

Portions of the deposition via video of Mark Wade Hawk, M.D., taken on February 13, 2019, as follows:

5:1-6:4; 6:9-8:20; 9:5-19; 9:23-10:13; 10:18-11:18; 12:24-16:23; 17:1-16; 18:9-22; 19:2-23:5; 23:9-27:13; 27:18-28:23; 29:6-23;

1    30:7-39:22.

2

3        Portions of the deposition via video of Jason A. London, M.D.,
4    taken on June 7, 2019, as follows:

5        4:1-7:16; 8:1-22:2; 22:6-31:19; 31:24-38:20.

6

7        Portions of the deposition via video of Pradeep Kumar, M.D., taken
8    on April 17, 2019, as follows:

9        4:1-17; 4:20-22:16; 22:21-31:16 [removed from 31:10: "from ICE;
10   correct?" and removed from 31:12: "ICE"]; 31:20-33:6 [removed from
11   32:19: "by ICE"]; 33:21-34:9; 34:12-35:1; 35:11-41:20; 42:1-48:22;
12   48:25-49:12; 49:15-50:4; 50:20-21 [removed from 50:21: "I represent the
13   County of"]; 50:23-51:1; 51:3-63:25; 64:14-17 [removed from 64:14: "A
14   I remember the question."].

15

16       Portions of the deposition via video of Bruce Gage, M.D., taken on
17   September 11, 2019, as follows:

18       7:7-17; 7:20-17:22; 18:18-19:4; 19:9-21; 20:14-21:16; 21:20-22:23;
19   23:4-18; 23:21-24:2; 24:18-21; 25:2-5; 26:9-27:1; 27:3-5; 27:9-29:7;
20   29:9-13; 29:22-30:10; 30:13-33:22; 34:1-35:4 [removed from 35:4: "What
21   were your recommendations for what"]; 35:10-16; 35:21-36:12; 36:21-
22   37:9; 37:17-39:7; 39:10-40:10; 40:13-41:3; 41:18-47:8.

23

24   ///

1    Portions of the deposition via video of Gregory Sokolov, M.D.,
2  taken on April 29, 2019, as follows:

3    6:15-18; 9:7-16; 10:6-25; 11:24-12:16; 13:11-25; 14:23-16:12;
4  17:4-9; 17:16-24 [removed from 17:24: "So this was an example of a"];
5  18:10-16; 19:23-20:10; 24:8-25:11 [removed from 25:11: "One of the"];
6  27:9-12; 27:18-22; 30:19-21; 30:25-31:1; 32:16-19; 35:11-15; 35:19-
7  36:1; 37:6-8; 37:11; 37:21-23; 38:1; 40:13-14; 40:17-22; 40:25-41:1;
8  41:24-42:2; 43:10-14; 43:17-21; 44:1-5; 44:12-19; 45:2-8; 45:14-18;
9  47:16-48:1; 48:5; 49:21-25 [removed from 49:25: "It is part of"]; 53:14-
10 19; 55:13-22; 56:14-16; 56:19-20; 57:2-7; 58:16-19; 59:4-10; 59:25-
11 60:13; 60:16-22; 60:25-61:18; 67:3-7; 68:1-2; 68:7-11; 68:25-69:4;
12 70:10-20; 78:1-8; 79:1-6; 80:5-6; 80:9-11 [removed from 80:11: "You are
13 going to have variability in"]; 82:6-12; 85:17-25; 86:17-19; 87:2-6;
14 94:4-95:10.

15

16    Portions of the deposition via video of Andrea Javist taken on May
17 16, 2018, as follows:

18    6:14-19; 9:21-23; 11:2; 17:20-19:7; 21:1-6; 22:16-21; 24:7-9;
19 25:18-24; 26:6-11; 29:14-22 [removed from 29:22: "And so they would
20 formally either go to the"]; 32:18-24; 33:16-23; 35:18-22; 36:4-9;
21 36:12-19; 37:9-10; 37:20-23; 38:3-8 [removed from 38:8: "So if there's
22 a concern raised from CHS's"]; 39:2-7 [removed from 39:7: "And so it"];
23 39:16-21; 42:5-7; 42:12-16 [removed from 42:16: "So that's when this
24 would come -- this"]; 43:5-13; 43:21-44:1; 44:6-9 [removed from 44:9:

1 | "There are some forms"]; 44:23-45:5; 48:9-12; 48:19-22; 50:11-14; 51:1-
2 | 6; 51:17-52:15 [removed from 52:15: "Sometime they're"]; 55:3-7; 55:17-
3 | 56:4 [removed from 56:4: "So whoever's making the"]; 58:6-19; 58:24-
4 | 59:12; 59:17-20; 60:1-6 [removed from 60:6: "But I can't if they made
5 | that"]; 61:7; 61:20-62:1; 62:12-14; 63:6-19; 64:1-2 [removed from 64:2:
6 | "And they would --"]; 65:19-66:2; 66:10-21; 67:6-11; 68:9-13; 69:12-
7 | 19; 70:15-20; 71:9-12; 71:23-72:3 [removed from 72:3: "They also have
8 | a desktop at their"]; 73:1-3; 74:2-5; 74:9-19; 75:2-5; 75:22-76:1; 76:5-
9 | 6; 76:9-12; 76:17-18; 77:17-21; 77:23-78:7; 82:6-19 [removed from
10 | 82:19: "And that is, you know, that's a"]; 83:1-2; 84:10-18; 85:7-15;
11 | 87:10-23; 88:24-89:8; 92:2-7; 94:5-14; 96:1-2; 96:21-24; 97:5-11;
12 | 97:19-24; 99:9-12; 99:16-18; 100:17-23; 101:25-102:4; 104:5-10; 105:9-
13 | 16; 105:25-106:4; 106:9-16; 106:21-107:1; 107:14-19; 114:4-7 [removed
14 | from 114:7: "Well -- could you repeat the question?"]; 114:13-15;
15 | 114:20-115:1; 117:24-118:10; 120:23-25 [removed from 120:25: "Oh, well,
16 | JBCT. We added the JBCT"]; 123:18-124:17; 125:11-21; 126:10-15; 126:24-
17 | 127:12; 128:8-13; 129:3-6; 131:22-132:13; 135:3-14; 136:15-20; 139:21-
18 | 24; 142:9-17; 142:23-25; 143:14-18; 144:8-14; 146:6-12.

19 | These are the portions of the above-mentioned transcript that
20 | Plaintiff designates to offer at trial via video.

21 |

22 | **Designation of Deposition Testimony**

23 | Portions of the deposition of Jerry Elder taken on May 16, 2018,
24 | to be read at trial as follows:

1    5:13-17; 8:24-9:12; 11:11-14; 13:19-25; 16:3-13;  19:9-18;  20:4-

2 11; 20:22-25; 21:1-8; 22:18-23:2; 28:6-14.

3    These are the portions of the above-mentioned transcripts that

4 Plaintiff designates to offer at trial.

5 DATED: December 12, 2019      MILES, SEARS & EANNI

6

7                               By:_____

8                                   DOUGLAS L. GORDON
                                    Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

<u>EXHIBIT F</u>

**Exhibit F – Defendants Discovery Documents**

Defendants intend to offer at trial portions of the depositions of the following witnesses:

1. Mendez, Amelia – 17:1-14; 26:22-27:17; 37:5-24.

2. Mendez, Luis – 47:21-51:14; 65:17-75:6.

Defendants intend to offer at trial portions of the depositions of the following witnesses, as necessary for impeachment or rebuttal:

3. Canning, Robert

4. Cohen, Mark

5. Dass, Danielle

6. Egenberger, Alexander

7. Elder, Jerry

8. Griem, Darin

9. Hawk, Mark

10. Hedge, Thomas

11. Javist, Andrea

12. Kaur, Manjeet

13. Keddington, Melissa

14. London, Jason

15. Magnusson, Amy

16. Olzack, Linda

17. Penn, Joseph

18. Raymond, David

19. Roof, Jason

20. Seitz, Tinley

21. Sokolov, Gregory

22. Stanley, Phillip

23. Torgerson, David

24. Venus, Sandra

25. Wallace, Martin

26. Weeks, Elizabeth

27. Williams, Charlene

28. Wills, Cheryl

29. Wu, Ming-Huei